IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Louis A. Dorff, Jr., | ) | C/A No. 6:25-cv-4000-BHH-WSB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Sonia E. Turner and Taylor-Marie Turner, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Louis A. Dorff ("Plaintiff") brings this action against Defendant Sonia E. Turner ("Sonia") and Defendant Taylor-Marie Turner ("Taylor-Marie") (collectively "Defendants") alleging claims under South Carolina and Florida law.  ECF No. 1.  Plaintiff and Sonia are each represented by counsel, but Taylor-Marie is proceeding *pro se*.  This matter is before the Court on Defendants' Motion for Summary Judgment.[1]  ECF No. 68.  Pursuant to 28 U.S.C. § 1332(a) and Local Civil Rule 73.02(B)(2)(e) (D.S.C.), the undersigned United States Magistrate Judge is authorized to review all pretrial matters in cases involving *pro se* litigants and submit findings and recommendations to the district court.

---

[1] On January 29, 2026, Taylor-Marie filed a "Motion to Join and Adopt" requesting to join and adopt in full Sonia's Motion for Summary Judgment (ECF No. 68), Sonia's Memorandum of Law in Support of Motion for Summary Judgment (ECF No. 68-1), and the excerpts of the transcript of Plaintiff's deposition testimony attached to Sonia's Motion (ECF No. 68-2).  ECF No. 73.  By Text Order, the Court granted Taylor-Marie's Motion to the extent that the Court considers all arguments and evidence submitted with Sonia's Motion for Summary Judgment as supporting summary judgment of claims asserted against Taylor-Marie, as well as Sonia.  *See* ECF No. 84. Thus, the Court refers to Sonia's Motion for Summary Judgment (ECF No. 68) as "Defendants' Motion for Summary Judgment."

1

**FACTUAL BACKGROUND**[2]

Plaintiff, a ninety-four-year-old[3] man living in Sarasota, Florida, transferred $866,264.20 to Sonia and Sonia's daughter, Taylor-Marie, over the course of roughly six years while receiving nothing in return. ECF Nos. 80-2, Exh. 1, Funds to Sonia; 80-3, Exh. 2, Funds to Taylor-Marie. Plaintiff has never met Defendants in-person and had not seen a photograph of Sonia prior to making the relevant transfers. ECF No. 68-2, Exh. A, Dorff Dep. at 18:2-4.

In late 2018, thirty days after Plaintiff had been served with divorce papers from his fifth wife, Sonia initiated contact with Plaintiff by calling him from a "no ID" telephone number. ECF No. 80-6, Exh. 5, Lou Dorff Dep. at 10:4-9, 13:5-10, 78:13-22. Plaintiff testified that the initial call was for Sonia to introduce herself as "Ms. No ID," and that Sonia told him that she was "going to be helping [Plaintiff] because [he] was in a divorce situation." *Id.* at 10:24-11:2, 11:23-12:6. Plaintiff further testified that during the initial call, Sonia told him that she knew Plaintiff's wife who had recently served him with divorce papers, and that she could "feed" Plaintiff information because she was from the "same town and same city in England." *Id.* at 11:23-12:6. Plaintiff further testified that during the initial call, Sonia told him that she was going to help him because she felt that Plaintiff was being manipulated and that she could give him information that would help him moving forward. *Id.* at 12:15-21.

---

[2] At the summary judgment stage, the Court must construe the facts in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

[3] Plaintiff asserts that he was ninety-four years old at the time that he filed his Response on February 19, 2026. ECF No. 80 at 1. Plaintiff also asserts that he was eighty-six at the time Sonia first contacted him in late 2018. *Id.* at 5.

Following the initial call, Plaintiff testified that Sonia persistently called Plaintiff from the "no ID" telephone number and that each call lasted "quite long."[4]  ECF No. 80-6, Exh. 5, Lou Dorff Dep. at 11:6-12, 12:22-13:4.  Plaintiff testified that Sonia called him every day over an unspecified period of time.  *Id.* at 11:13-22.  While Plaintiff was in the hospital for treatment of his kidney stones, Sonia called him twice per day.  *Id.* at 13:11-24.  During this early stage, Plaintiff testified that he and Sonia "were not gaining much" and that they discussed the "idle things of living" and Plaintiff's health.  *Id.* at 15:8-11.  Plaintiff testified that he and Sonia did not discuss Sonia's financial needs, but Sonia did talk about her financial problems as a "day-to-day problem that she encountered in living."  *Id.* at 15:12-17.  Plaintiff's testimony described such discussions, "'Oh, I have to go here and I have to go there, and I have to do this and I have to do that, and I have this bill coming and I have that bill coming.' And she said it's very expensive."  *Id.* at 15:17-22.  Plaintiff testified that Sonia did not discuss her personal life, including her marriage or divorce at this time.  *Id.* at 15:23-25.

Plaintiff and Sonia's relationship was "slowly becoming more than a casual relationship. It was becoming almost like a love relationship."  ECF No. 80-6, Exh. 5, Lou Dorff Dep. at 17:11-17.  Plaintiff testified that he "probably fantasized about her … because [he] was living alone and [he] lost his wife of 21 years [who] was English."  *Id.* at 17:18-20.  Plaintiff testified that he missed the English accent and having a person "in and around me during the days and nights."  *Id.* at 17:20-22.  Plaintiff did not know who Sonia was, he had never seen or met her, and he had asked her for photographs but never received any.  *Id.* at 18:2-4.  Plaintiff testified that he called Sonia "love," which is an English "norm" and "kind of a slang way the English talk."  *Id.* at 17:1-5.

---

[4] During the early stage of Plaintiff and Sonia's contact, Plaintiff could not call Sonia himself because Sonia called only from the "no ID" telephone number.  ECF No. 80-6, Exh. 5, Lou Dorff Dep. at 11:6-12.

Plaintiff also referred to Sonia as his "girlfriend" despite Sonia never telling him that she was his girlfriend, promising to marry him, or promising to live with him because "[Sonia was] a friend that was a girl." ECF No. 68-2, Exh. A, Dorff Dep. at 76:23-77:25. Plaintiff testified that he enjoyed being in a position where he was able to "flex his financial muscle" by helping Defendants. *Id.* at 82:8-15.

Plaintiff submitted phone records showing the call history between the parties for portions of 2021, all of 2022 and 2023, and portions of 2024 and 2025.[5] *See* ECF No. 80-7, Exh. 6, Dorff and Turners Talk History. Between May 2021 and December 2021, Plaintiff and Defendants engaged in 973 phone calls which amounted to over 327 hours of total time spent on phone calls. ECF Nos. 80-7, Exh. 6, Dorff and Turners Talk History at 39; 80-6, Exh. 5, Lou Dorff Dep. at 11:16-18; 80-14, Exh. 13, Sonia Turner Dep. at 30:5-15. Out of the 973 calls, 581 were initiated by Defendants. ECF No. 80-7, Exh. 6, Dorff and Turners Talk History at 100. In 2022, the parties called each other 716 times for a total of roughly 150 hours. *Id.* 409 of those calls were initiated by Defendants. *Id.* In 2023, the parties had 495 calls for roughly 92 hours and 346 were initiated by Defendants. *Id.*

Plaintiff testified that he lives independently in a Sarasota, Florida condominium ("Florida condominium"), has a driver's license and drives, does his own grocery shopping, handles his own banking, and makes his own decisions regarding medical care. ECF No. 68-2, Exh. A, Dorff Dep. at 60:10-25, 63:1-14. Plaintiff states that he is a strong willed, independent man. *Id.* at 74:22-25.

---

[5] Plaintiff asserts that he has not been able to obtain all of his phone records and that he has attempted to obtain phone records from Sonia through the discovery process. ECF No. 80 at 5 n.3. Such phone records were subject to Plaintiff's Motion to Compel (ECF No. 60) which the undersigned granted by Order issued after the Plaintiff had filed the Response to Defendants' Motion for Summary Judgment. ECF No. 82.

To the best of his ability, Plaintiff is not the kind of person who lets others make decisions for him when he believes that the decision is wrong. *Id.* at 75:1-5. Plaintiff testified that he has always prided himself in being financially savvy. *Id.* at 75:6-8. Plaintiff testified that he was not helpless or vulnerable when he made the "decisions involving Sonia[,]" and that such decisions were made based on the facts that Plaintiff thought that Sonia needed some help. *Id.* at 75:9-14. However, Plaintiff also submits two contracts showing that Sandra Jaffe ("Jaffe"), a registered nurse, and John Manning ("Manning"), Plaintiff's office manager, provide certain services for Plaintiff on a four hours per day, five days per week, basis.[6] ECF Nos. 80-8, Exh. 7, Jaffe Contract; 80-9, Exh. 8, NewView Services Contract. The contract for Jaffe's services sets out that Jaffe provides the following services to Plaintiff: "home management; personal assistant; senior non-medical care/aide services (e.g. grooming, bathing, personal hygiene, incontinence care, dressing/undressing, toileting, transfer assistance, medication reminders, grocery shipping, meal preparation, feeding, laundry/housework); cleaning;… and business consulting for Henry Services (a provider of non-medical services for the elderly). ECF No. 80-8, Exh. 7, Jaffe Contract. The contract for NewView's services sets out that the company provides the following services to Plaintiff: "home management; personal assistant; non-medical senior; pet and home sitting; cleaning; packing and moving; documenting; & business (e.g., consulting, financial analysis, clerical assistance, file & document management, business planning, bookkeeping, et cetera). ECF No. 80-9, Exh. 8, NewView Services Contract. Plaintiff testified that Jaffe arranges his doctor's appointments and accompanied him to his deposition. ECF No. 80-6, Exh. 5, Lou Dorff Dep. at 63:16-21. Plaintiff testified that Manning works as his office manager, pays bills, and writes

---

[6] One of the NewView Services contracts is dated August 1, 2018. ECF No. 80-9, Exh. 8, NewView Services Contracts at 2.

checks. *Id.* at 96:16-21. Plaintiff testified that Manning does not advise him, but rather Manning "does the things" that Plaintiff asks Manning to do. *Id.* at 97:11-16. Plaintiff also testified that he employs other assistants to clean his condominium and drive him. *Id.* at 96:23-97:8.

Regarding driving, Plaintiff testified that he drives a car but that he does not "know the roads any more[,]" and that he did not drive to the deposition. ECF No. 80-6, Lou Dorff Dep. at 60:23-61:4. Plaintiff testified that the roads have changed, there is so much traffic, and he does not know how to get around Bradenton or "any of those." *Id.* at 61:4-6. Plaintiff testified that "if [he] had to," he drives to Publix, every two weeks. *Id.* at 61:7-11. Plaintiff further testified that he could drive to other places as well, but that he "made a mistake once and [he] drove to Benderson and [] had to have someone come find [him] and get [him] home." *Id.* at 61:7-11. Plaintiff testified that he tries to stay off the roads during rush hours because he does not know the roads and because he is frightened of the traffic. *Id.* at 97:3-8.

Plaintiff also testified that "[t]hings have changed so much in [his] lifetime" regarding his memory, and that he is taking a memory drug called "Prevagen Super," which has "brought back about ten years" of his "life history."[7] ECF No. 80-6, Lou Dorff Dep. at 61:12-15. Plaintiff testified that before the memory drug, he was completely losing his memory, and that his memory has come back slowly, and is coming back more and more as he [goes] through the initiations of

---

[7] Plaintiff's memorandum points out that certain deposition testimony demonstrates Plaintiff's memory issues, including: (1) when Plaintiff testified that he was born on October 22, 1931; (2) when Plaintiff could not initially remember his ex-wife's name; (3) when Plaintiff could not remember what a $165,000 wire transfer to Sonia was for; (4) when discussing the $427,945 transfer of purchase money for the Greenville property, Plaintiff thought that the house was at "Morning" and could initially only generally remember the Greenville property being in South Carolina; (5) when Plaintiff testified that he never married an American; and (6) when Plaintiff testified that he did not have any family living anymore, but a few minutes prior had spoken about his three living adult children. ECF No 80-6, Exh. 5, Lou Dorff Dep. at 8:7-8, 12:9-11, 20:1-6, 20-17-21:3, 59:7-8, 67:11, 59:13-20.

the things that [he is] having to do as things of today." *Id.* at 61:17-20. Plaintiff testified that his age is "taking a hold" of him, but that he has "picked up ten years back historically" and "a lot of things are finally coming through a cloud in [his] mind." *Id.* at 87:19-22. At the time of the deposition, Plaintiff stated that he did not have the capability of remembering for long periods of time or for reading quickly. *Id.* at 86:23-87:4.

Plaintiff testified that he transferred to Sonia amounts of money that he felt "she needed to go forward" via checks and wire transfers. ECF No. 80-6, Exh. 5, Lou Dorff Dep. at 18:8-14. Plaintiff testified that he made such transfers because he felt that he was in a better position and because he had been "brought up that if you have something you can do a lot by sharing it with someone that doesn't." *Id.* at 18:15-19. Plaintiff felt that Sonia did not have "a lot," and believed that she was "struggling in a lot of areas." *Id.* at 18:20-23. Plaintiff testified that he "tried to clear [Sonia's problems] by sending checks." *Id.* at 18:23. Plaintiff testified that when he sent checks, he indicated that "this is a check for a certain subject, take care of that." *Id.* at 18:23-25. Plaintiff testified that he chose to continue communicating with Sonia during the relevant period. ECF No. 68-2, Exh. A, Dorff Dep. at 71:1-7. Plaintiff also testified that he chose to transfer the money at issue during the relevant period. *Id.* at 71:8-12.

On October 22, 2020, Plaintiff wired $427,945 to Defendants for the purchase of a house located at 401 Nearmeadows Way, Simpsonville, South Carolina ("South Carolina property"). ECF Nos. 80-6, Lou Dorff Dep. at 20:17-21:10; 80-3, Exh. 2, Funds to Taylor-Marie Turner at 2. The next day, on October 23, 2020, Sonia executed a quitclaim deed granting herself and Taylor-Marie a joint tenancy with a right of survivorship in exchange for Taylor-Marie paying Sonia $1. ECF No. 19, Exh. 18, 401 Nearmeadows Way, Simpsonville Quit Claim Deed. Plaintiff submits

7

a bank statement showing that the $427,945 in purchase money that Plaintiff transferred was sent to Taylor-Marie's bank account. ECF No. 80-3, Exh. 2, Funds to Taylor-Marie Turner.

On March 31, 2021, a general warranty deed for the Florida condominium was executed granting Plaintiff and Sonia a joint tenancy with a right of survivorship interest in the property. ECF No. 80-12, Exh. 11, Sarasota Florida General Warranty Deed. Plaintiff testified that it was not his choice to make Sonia a co-owner of the Florida condominium. ECF No. 80-6, Lou Dorff Dep. at 72:14-16. Plaintiff testified that he had to "evacuate" his prior home due to a court settlement and find a new place to live. *Id.* at 72:22-24. Plaintiff testified that Sonia found the Florida condominium and made all of the arrangements for its purchase through "the real estate people." *Id.* at 72:1-73:2. Plaintiff testified that once he discovered that Sonia was named on the deed, he asked her to remove her name, which she did in 2024. *Id.* at 73:3-25.

On July 12, 2021, the Honorable Rochelle Y. Conits, Family Court Judge for the Thirteenth Judicial Circuit ("Judge Conits"), issued a final order approving an agreement that Sonia and her ex-husband reached in resolving a family court proceeding regarding alimony and attorney's fees and costs. ECF No. 80-13, Exh. 12, Final Order Sonia Turner Family Ct Case. Under the agreement, Sonia's ex-husband agreed to pay a $25,000 lump sum to Sonia within fourteen days from the date on which the agreement was heard and approved. *Id.* at 2. Additionally, Sonia's ex-husband agreed to signing a refund on an escrow account on a former marital home and making no claim to the escrowed funds. *Id.* Sonia testified that the former marital home sold for $307,000, and that she received all of the proceeds from the sale.[8] ECF No. 80-14, Exh. 13, Sonia Turner Dep. at 72:18-73:25.

---

[8] Sonia also testified that she disbursed some of the proceeds to certain family members whom Sonia owed money to, including $50,000 to her biological mother. ECF No. 80-14, Exh. 13, Sonia Turner Dep. at 72:18-73:25.

Sonia had submitted a financial declaration and affidavit, both dated February 11, 2021, to the family court in connection with the proceeding. *See* ECF Nos. 80-4, Exh. 3, Sonia Turner Financial Decl.; 80-5, Exh. 4, Sonia Turner Aff.; 80-14, Exh. 13, Sonia Turner Dep. at 69:1-70:7. Regarding the financial declaration and whether she disclosed the South Carolina property in the "value of real estate" section, Sonia testified that she did not include the South Carolina property in the declaration or subsequently amend the declaration. ECF No. 80-14, Exh. 13, Sonia Turner Dep. at 69:1-25. Both of the documents failed to disclose the $427,945 that Plaintiff transferred for the purchase of the South Carolina property or Sonia's resulting interest in the property. *See* ECF Nos. 80-4, Exh. 3, Sonia Turner Financial Decl.; 80-5, Exh. 4, Sonia Turner Aff. In the affidavit, Sonia stated that "I have [] had to remove additional money from my retirement to make ends meet. I only have $20,000 left in my retirement. … I am sick over all this." ECF No. 80-5, Exh. 4, Sonia Turner Aff. at 2-3.

On September 14, 2021, Plaintiff executed a Durable Power of Attorney under Florida law appointing Sonia and his friend, Greg Dorsey, as agents. ECF No. 80-10, Exh. 9, Dorff Durable Power of Attorney at 2. Under the power of attorney, Plaintiff granted the agents the power to convey or mortgage property; accept as a gift, buy, receive, or otherwise acquire an interest in real property and tangible personal property. *Id.* at 2-3, Art. II §§ 2.3-2.4. In addition, Plaintiff granted the agents the power to create and change any ownership arrangement, in which Plaintiff was a joint tenant owning an interest with rights of survivorship. *Id.* at 7, Art. III.

Plaintiff testified that he executed the power of attorney because he was estate planning and "the people"[9] who were putting it together thought that a power of attorney should be a part

---

[9] It appears that Plaintiff was referencing estate planning professionals. *See* ECF No. 80-6, Exh. 5, Lou Dorff Dep. at 27:10-28:15.

of the estate plan. ECF No. 80-6, Exh. 5, Lou Dorff Dep. at 27:10-16. Plaintiff testified that he had to hire help to take care of estate planning because he was not "capable of understanding," and that he was just trying to "survive" the divorce, moving to a new home, and handling his "legal situation" without any help. *Id.* at 30:8-19. Plaintiff testified that, by appointing Sonia as his agent, he gave her power and control of his finances, and that he did not know and was not informed of the power of what he had done at the time of the appointment. *Id.* at 31:5-10. Plaintiff also testified that it was his idea and his choice to name Sonia as his power of attorney. *Id.* at 31:15-19, 72:10-13. Notably, Plaintiff identified Sonia as his niece in the power of attorney. ECF No. 80-10, Exh. 9, Dorff Durable Power of Attorney at 2. Plaintiff testified that he named Sonia as his niece because it was "easier" to identify Sonia as his niece, rather than someone that he had never met or been personally involved with in person, when discussing her with his "estate planning people." ECF No. 80-6, Exh. 5, Lou Dorff Dep. at 27:2-28:15. Plaintiff testified that he appointed Sonia as his agent because, at that time, he and Sonia were in a position where he trusted her and he believed in her, and "we had a relationship that was a love relationship to each other as friends. And I felt that if I needed a guardian she would probably be the [guardian]." *Id.* at 27:20-25. Plaintiff testified that he and Sonia agreed that they had a relationship that was trustworthy and that they believed in each other, and also that she was a friend. *Id.* at 30:24-31:1. Plaintiff also testified that he felt he and Sonia would be able to "put something together to actually take care of the situations that were developing." *Id.* at 31:2-4. When discussing the appointment with Sonia, Plaintiff told her that he trusted her as a dear friend and honest person who would "act as a friend should act." *Id.* at 31:20-24.

On October 4, 2021, Plaintiff transferred $165,000 to Sonia for the purchase of a "co-op"[10] in New York located at 118-11 84th Avenue, Unit 603, Queens, New York ("New York property"). ECF Nos. 80-2, Exh. 1, Funds to Sonia Turner at 2; 80-6, Exh. 5, Lou Dorff Dep. at 83:1-15. Regarding whether Sonia ever asked him to purchase the New York property, Plaintiff testified that, "[s]he suggested it might be [] a more efficient item than renting." ECF No. 80-6, Exh. 5, Lou Dorff Dep. at 83:1-5. Regarding whether Sonia's suggestion influenced him to purchase the New York property, Plaintiff testified that he chose to buy it because it would be a good investment, even if the property was not used as Sonia intended. *Id.* at 83:6-10. Plaintiff further testified that because the property "met the requirements of [Sonia's] way of life with the airlines, it was a wise financial move to purchase the property. And we, at a later time if [Sonia] retired, we [could] always sell the property for financial needs." *Id.* at 83:11-15.

On November 3, 2021, Plaintiff learned of the sale of Sonia's marital home subject to Judge Conits' final order and asked Sonia about the sale. ECF No. 80-15, Exh. 14, November 3, 2021 Emails at 3-4. Plaintiff told Sonia that he discovered that the home had sold for $307,000 on May 11, 2021. *Id.* at 4. Plaintiff asked Sonia why she had not told him about the sale and wrote, "WHY, MAKE UP THE REASONS AND NOT JUST TELL THE TRUTHS." *Id.* (emphasis in the original). Plaintiff further wrote, "I [d]o not like lies and hiding things from GOOD friends. Where do you stand? What were your reasons? I do know everyone makes mistakes,[ ] and should have the chance to explain." *Id.* (emphasis in the original). In response, Sonia emailed Plaintiff that the sale of the home was not settled and that she would have told Plaintiff when such sale was settled.

---

[10] "Co-op" is short for "Cooperative," which means "[a] dwelling (as an apartment building) owned by its residents, to whom the apartments are leased." COOPERATIVE, Black's Law Dictionary (12th ed. 2024).

11

*Id.* at 2.  Sonia also wrote that, "part of [her] is very scared having to still deal with the court."  *Id.* at 3.

On March 14, 2023, Plaintiff transferred $151,400 to Taylor-Marie for the purchase of a house in the United Kingdom located at 15B Carlingford Road, Hucknall, Nottingham NG15 7AE ("England property").  ECF No. 80-3, Exh. 2, Funds to Taylor-Marie Turner at 3.  On February 25, 2023, Taylor-Marie texted Plaintiff that, "[Sonia] said she will write [an] agreement for us so I can make monthly payments."  ECF No. 80-17, Exh. 16, Feb. 25, 2023 Text Msg. Taylor-Marie to Dorff.  Plaintiff asserts that such agreement was never written.  ECF No. 80 at 12.  Additionally, the Court sees nothing in the record to indicate that any monthly payments were made.

Plaintiff also submits a source of funds disclosure[11] submitted by Taylor-Marie in connection with the purchase of the England property.  ECF Nos. 80-16, Exh. 15, Taylor-Marie Turner Source of Funds; 80-11, Exh. 10, Taylor-Marie Turner Dep. at 47:1-25.  In the disclosure, Taylor-Marie stated that the source of funds for the purchase of the England property was her mother, Sonia's, account.  ECF Nos. 80-16, Exh. 15, Taylor-Marie Turner Source of Funds; 80-11, Exh. 10, Taylor-Marie Turner Dep. at 47:1-25.  Taylor-Marie testified that the source of funds was from a joint account with Sonia's name on it[12], but when Taylor-Marie was asked how the money got into such account, Taylor-Marie testified that the money was from Plaintiff.  ECF No. 80-11, Exh. 10, Taylor-Marie Turner Dep. at 47:18-23.

---

[11] It appears that the source of funds disclosure was submitted to a "solicitor" who performed the closing for the England property on Taylor-Marie's behalf.  ECF No. 80-11, Exh. 10, Taylor-Marie Turner Dep. at 47:1-5.

[12] Plaintiff asserts that Sonia has not produced certain statements from her and Taylor-Marie's joint bank account.  ECF No. 80 at 3 n. 2.  Such bank records were subject to Plaintiff's Motion to Compel (ECF No. 60) which the undersigned granted by Order issued after the Plaintiff had filed the Response to Defendants' Motion for Summary Judgment.  ECF No. 82.

Regarding whether he chose, agreed, and allowed Sonia to take title to the South Carolina, New York, and England properties in her name, Plaintiff testified that he bought the properties for her and that he did not put his name on the properties' titles. ECF No. 68-2, Exh. A. Lou Dorff Dep. at 91:19-92:1.

Plaintiff testified that at some point in time, he began to realize that he was being taken advantage of. ECF No. 68-2, Exh. A, Dorff Dep. at 83:16-25. As examples, Plaintiff testified that one of the Defendants used a credit card that Plaintiff had given them beyond the card's limits, that Defendants were putting money in different accounts, and that Defendants were using some of the transferred money for things other than what Plaintiff had transferred the money for. ECF No. 80-6, Exh. 5, Lou Dorff Dep. at 83:16:25, 84:8-19, 89:11-25, 91:5-13. Plaintiff testified that once he stopped Defendants' access to the credit card, that he figured he would stop all of the financial "situations" with Sonia. *Id.* at 84:1-7. Plaintiff testified that "organizations," apparently the banking institutions that he used to transfer the money to Defendants, had issued warnings regarding the transfers. *Id.* at 88:1-19. However, Plaintiff testified that he did not believe the warnings until later. *Id.* at 83:16-84:22, 86:1-7.

Plaintiff commenced this action on May 13, 2025, by filing the Complaint. ECF No. 1. On June 30, 2025, Sonia filed an Answer.[13] ECF No. 23. On July 15, 2025, Taylor-Marie filed an

---

[13] On June 13, 2025, Plaintiff filed a Motion for Preliminary Injunction requesting that the Court issue a preliminary injunction enjoining Sonia from dissipating the South Carolina property, the New York property, and the transferred money. ECF No. 6. On June 23, 2025, Sonia filed a Response. ECF No. 15. On June 25, 2025, the Honorable Bruce Howe Hendricks, United States District Judge for the District of South Carolina, held a hearing as to the Motion for Preliminary Injunction. ECF No. 20. On June 30, 2025, Judge Hendricks issued an Order granting the Motion and enjoining Sonia transactions regarding of the South Carolina, New York, and England properties. ECF No. 21. After Taylor-Marie filed an Answer, on August 6. 2025, the undersigned issued a Preliminary Injunction Order enjoining Taylor-Marie from the same conduct as set out in Judge Hendricks' Order issued against Sonia. ECF No. 36.

Answer. ECF No. 27.[14]    On January 28, 2026, Sonia filed the Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. ECF No. 68. On the same date, in an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Taylor-Marie was advised of the summary judgment and motion to dismiss procedures and the possible consequences for failing to respond adequately. ECF No. 70. On January 29, 2026, Taylor-Marie filed a Motion to Join and Adopt requesting to join in and adopt the arguments in Sonia's Motion for Summary Judgment and its attachments. ECF No. 73. On February 19, 2026, Plaintiff filed a Response to the Motion for Summary Judgment. ECF No. 80. This matter is ripe for review.

## APPLICABLE LAW AND ANALYSIS

**Summary Judgment Standard**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, a court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

---

[14] On September 22, 2025, Plaintiff filed a Motion to Compel, which the Court granted by Text Order entered on October 16, 2025, wherein Taylor-Marie was directed to serve responses to Plaintiff's discovery requests. ECF Nos. 46; 48. On November 20, 2025, Plaintiff filed another Motion to Compel, which the Court granted by Order issued on March 5, 2026, wherein Sonia was directed to serve responses to Plaintiff's discovery requests. ECF Nos. 60; 82.

14

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of a plaintiff's position is insufficient to withstand a defendant's summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

**Claims Asserted**

Plaintiff's Verified Complaint asserts six (6) causes of action: (1) Unjust Enrichment, (2) Exploitation in violation of the South Carolina Omnibus Adult Protection Act, S.C. Code Ann. § 43-35-5, *et seq*., (3) Exploitation in violation of the Florida Adult Protective Services Act, Fla. Stat. § 415.101, *et seq*., (4) Breach of Fiduciary Duty and Aiding and Abetting Breach of Fiduciary Duty, (5) Fraud and Misrepresentation, and (6) Constructive Trust.

**Defendants' Motion for Summary Judgment**

Defendants assert that Plaintiff's deposition testimony contains admissions which establish that no genuine dispute of material fact exists and that Defendants are entitled to judgment as a matter of law. ECF No. 68-1 at 9. In addition, Defendants assert that such admissions affirmatively establish Defendants' defenses. *Id.*

### *Fraud and Misrepresentation*

In the Fifth Cause of Action[15], Plaintiff asserts a claim for fraud and misrepresentation based on Defendants representing that Sonia would take care of Plaintiff as he aged.  ECF No. 1 ¶¶ 97-103.

### *Fraud and Misrepresentation Generally*

Under South Carolina law, to establish fraud, a plaintiff must show, by clear, cogent, and convincing evidence: (1) a representation of fact; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury. *See*, *e.g.*, *Assa'ad-Faltas v. Wal-Mart Stores E., L.P.*, C/A No. 3:18-cv-3563-TLW-SVH, 2021 WL 2228464, at *8 (citing *Schnellmann v. Roettger*, 645 S.E.2d 239, 382 (S.C. 2007)) (D.S.C. Jan. 11, 2021), *R&R adopted by* 2021 WL 2227350 (D.S.C. June 1, 2021), *aff'd by* 2022 WL 17103717 (4th Cir. Nov. 22, 2022).

To establish a claim for negligent misrepresentation, a plaintiff must show that: (1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the statement; (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance on the representation.  *See*, *e.g.*, *Isaac v. Onions*, 915

---

[15] Because the issues and arguments for the fraud and misrepresentation claim impact the analysis of the other claims, the Court addresses this claim first.

S.E.2d 492, 534 (S.C. 2025) (citing *Quail Hill, LLC v. County of Richland*, 692 S.E.2d 499, 508 (S.C. 2010)).

Defendants contend that Plaintiff cannot establish fraud and misrepresentation because: (1) any representations made by Defendants to Plaintiff were statements as to future events and mere evidence of broken promise is insufficient to establish fraud; (2) certain admissions in Plaintiff's deposition testimony preclude Plaintiff from showing the "justifiable reliance" elements for fraud and misrepresentation; and (3) Plaintiff cannot claim he was defrauded into making the transfers when he admitted that the transfers were voluntary charitable acts motivated by his own benevolence.  ECF No. 68-1 at 16-17.

### *Representations as to Unfulfilled Promises or Future Events*

The South Carolina Supreme Court has held that, generally, "fraud must relate to a present or pre-existing fact, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events.  However, where one promises to do a certain thing, having at the time no intention of keeping his agreement, it is a fraudulent misrepresentation of a fact, and actionable as such." *Davis v. Upton*, 157 S.E.2d 567, 568 (S.C. 1967) (citations omitted).  "Entering into an agreement, with no intention of keeping such agreement, constitutes fraudulent misrepresentation; however, mere breach of contract does not constitute fraud."  *Adams v. G.J. Creel & Sons, Inc.*, 465 S.E.2d 84, 85 (S.C. 1995) (citing *Dailey Co. v. American Institute of Marketing Systems*, 183 S.E.2d 444 (S.C. 1971)).  "A future promise is not fraudulent unless such a future promise was part of a general design or plan existing at the time, made as part of a general scheme to induce the signing of a paper or to make one act, as he otherwise would not have acted, to his injury."  *Bishop Logging Co. v. John Deere Indus. Equip. Co.*, 455 S.E.2d 183, 187 (S.C. Ct. App. 1995) (quoting *Coleman v. Stevens*, 117 S.E. 305, 307 (S.C. 1923).

Defendants appear to contend that any representations made to Plaintiff were statements as to future events which were left unfulfilled. ECF No. 68-1 at 16-17. Defendants point to portions of Plaintiff's deposition testimony, including Plaintiff's testimony that: (1) Sonia promised to take care of him; (2) Sonia made "a lot" of promises to Plaintiff that never came true; (3) Sonia never promised to marry him nor live with him; (4) Plaintiff fantasized "a bit in the fact" that he thought Sonia was a good friend; and (5) any semblance of a romantic relationship was the product of Plaintiff's own imagination. ECF No. 68-2, Exh. A, Dorff Dep. at 88:20-23, 89:2-3, 77:8-12, 77:13-23.

Plaintiff contends that Plaintiff's "fantasy" was not a spontaneous delusion, but rather a carefully constructed narrative built by Defendants through their words and actions over the span of years. ECF No. 80 at 21. Plaintiff argues that the record shows a clear pattern of Defendants' misrepresentations, including: (1) Sonia telling Plaintiff that she was being forced to sell her marital home and had nowhere to live, while her financial declaration revealed that she was living at the marital home at that time; (2) Sonia telling Plaintiff that "[t]he house sale is NOT settled" months after an order issued by the family court ordered the proceeds of the house sale be given to Sonia; (3) Sonia telling Plaintiff that her family court proceedings were ongoing when they were actually resolved while Sonia was Plaintiff's Power of Attorney; (4) Defendants wiring the $427,945 that Plaintiff had transferred to Sonia for the purchase of the Greenville property to Taylor-Marie's bank account just a few months before Sonia submitted a financial declaration and affidavit to the family court which failed to disclose the $427,945; (5) Sonia granting a portion of her interest in the Greenville property to Taylor-Marie by quitclaim deed on the same date on which the Greenville property was purchased. ECF Nos. 80-4, Exh. 3, Sonia Turner Financial Decl.; 80-5, Exh. 4, Sonia Turner Aff.; 80-10, Exh. 9, Dorff Durable Power of Attorney; 80-11, Exh. 10,

Taylor-Marie Turner Dep. at 24:8-17; 80-13, Exh. 12, Final Order Sonia Turner Family Ct. Case; 80-15, Exh. 14, Nov. 3, 2021 Emails; 80-19, Exh. 18, 401 Nearmeadows Way, Simpsonville Quit Claim Deed.

The record shows that Sonia promised Plaintiff that she would take care of Plaintiff as he aged. ECF No. 68-2. Exh. A, Dorff Dep. at 88:20-23. Such representation is a "future promise," but the record also contains evidence, taken in the light most favorable to the Plaintiff, suggesting that such representation was part of a general scheme to induce Plaintiff to transfer more money to Sonia. *See Bishop Logging Co.*, 455 S.E.2d at 187. Plaintiff points to such evidence, including Sonia's representation that she was being forced to sell her marital home and had nowhere to live, while she was living in the marital home at the time of such representation, as well as the email exchange between Plaintiff and Sonia made on November 3, 2021, wherein Sonia represented that the sale of her martial home was not settled and that the family court proceedings were ongoing. ECF Nos. 80-4, Exh. 3, Sonia Turner Financial Decl. at 1; 80-13, Exh. 12, Final Order Sonia Turner Family Ct. Case; 80-15, Exh. 14, Nov. 3, 2021 Emails. The record also shows that Sonia initially contacted Plaintiff from a "no ID" phone number, that Defendants persistently continued to contact Plaintiff, and that Sonia often discussed her financial problems with Plaintiff during the phone calls. ECF Nos. 80-6, Exh. 5, Lou Dorff Dep. at 10:4-9, 13:5-10, 11:6-22, 12:22-13:4, 13:11-15:1, 15,:12-22; 80-7, Exh. 6, Dorff and Turner Talk History. The record also shows that some of the money that Plaintiff transferred to Defendants was transferred to Taylor-Marie's bank account, that Sonia granted Taylor-Marie a joint interest in the South Carolina property in exchange for Taylor-Marie paying $1 just one day after Plaintiff provided the purchase money for the South Carolina property, and that Taylor-Marie "misused" a credit card that Plaintiff gave her access to. ECF Nos. 80-3, Exh. 2, Funds to Taylor-Marie Turner; 80-6, Exh. 5, Lou Dorff Dep. at 83:16:25, 84:8-19,

19

89:11-25, 91:5-13; 80-19, Exh. 18, 401 Nearmeadows Way, Simpsonville Quit Claim Deed. A reasonable jury could conclude that Sonia's future promise to take care of Plaintiff was part of Defendants' general plan to fraudulently induce Plaintiff to transfer money to Defendants. In addition, a reasonable jury could conclude that Sonia made false representations relating to then-present financial condition, with fraudulent intent to induce Plaintiff to transfer money to Defendants. *See*, *e.g.*, *Schaefer v. Fam. Med. Centers of S.C., LLC*, C/A No. 3:18-cv-02775-MBS, 2019 WL 1003349, at *6 (D.S.C. Feb. 28, 2019) (finding that a plaintiff pled facts sufficient to show a general fraudulent scheme related to a settlement agreement and that representations as to future timely payments under the agreement and solvency were made in furtherance of that scheme sufficient to state a claim for fraud when the defendant represented that it was solvent and intended to remain solvent but then closed and transferred its assets to a different entity). Accordingly, to the extent that Defendants argue Sonia's promise to take care of Plaintiff as Plaintiff aged cannot function as a predicate representation for the purposes of Plaintiff's fraud and misrepresentation claim as a matter of law, such argument is unpersuasive.

### *Right to Rely and Justifiable Reliance*

Defendants also contend that Plaintiff cannot establish the reliance elements of the fraud and misrepresentation claim as a matter of law because of certain admissions made in Plaintiff's deposition testimony. ECF No. 68-1 at 17. Specifically, Defendants argue that Plaintiff admitting that: (1) he never met Defendants in person; (2) his belief that he was in a romantic relationship with Sonia was a product of his own imagination and fantasy; (3) other than asking Sonia to provide him with pictures of herself, Plaintiff made no other investigations and performed no other due diligence to determine Sonia's identity; and (4) he transferred over $800,000 without verifying

20

any information about Sonia, shows that Plaintiff was not reasonable under the circumstances. ECF No. 68-2, Exh. A, Dorff Dep. at 18:2-4, 19:15-17, 77:13-23.

Plaintiff contends otherwise. ECF No. 80 at 21-22. Plaintiff argues that his reliance was based on the pattern of misrepresentations made by Defendants, generally relating to the false statements that Defendants were financially destitute, as well as relating to the false representations that Sonia would take care of him. *Id.* Plaintiff argues that he is a vulnerable adult with a declining memory, and points to his testimony that he trusted Sonia as an honest person. *Id.* Plaintiff also argues that Defendants' own conduct, including talking on the phone with Plaintiff for thousands of minutes and cultivating his trust, created the reliance that Defendants now argue does not exist. *Id.*

As to the "justifiable reliance" element for establishing fraud, Plaintiff is required to show that he had the "right to rely" on Defendants' representations. *See Assa'ad-Faltas*, 2021 WL 2228464, at *8. As to the "justifiable reliance" element for establishing misrepresentation, Plaintiff is required to show that he "justifiably relied on the representation." *See Isaac*, 915 S.E.2d at 534.

### *Right to Rely*

"The right to rely must be determined in light of the plaintiffs duty to use reasonable prudence and diligence under the circumstances in identifying the truth with respect to the representations made to him." *Armstrong v. Collins*, 621 S.E.2d 368, 375 (S.C. Ct. App. 2005) (quoting *Regions Bank v. Schmauch*, 582 S.E.2d 432, 444-45 (S.C. Ct. App. 2003)). However, a party may rely on representations without making further inquiry when a fiduciary or confidential relationship exists between the parties. *Id.* (citing *Epstein v. Howell*, 419 S.E.2d 379, 380-82 (S.C. Ct. App. 1992)). In *Cheney Bros., Inc.*, the United States Court of Appeals for the Fourth Circuit

21

noted that, "[g]enerally, the cases in which South Carolina courts have recognized a right to rely involve parties of disparate economic and bargaining strength." *Id.* (citing *Thomas v. Am. Workmen*, 14 S.E.2d 886, 888 (S.C. 1941)). The Fourth Circuit recognized that related to the right to rely element, the reliance must be reasonable. *Id.* at 115 (citing *Thomas*, 14 S.E.2d at 887-888). In *Thomas*, the Supreme Court of South Carolina set forth considerations used to determine whether reliance upon representation in a particular case was justifiable or excusable, including: "form and materiality of the representations, the respective intelligence, experience, age, and mental and physical condition of the parties, and the relation and respective knowledge and means of knowledge of the parties." *Thomas*, 14 S.E.2d at 888 (collecting cases). Whether a plaintiff had the right to rely is a question of fact. *Epstein*, 419 S.E.2d at 381.

The admissions used by Defendants to argue that Plaintiff did not have the right to rely and that any reliance was unreasonable fail to establish such as a matter of law. Defendants point to Plaintiff's admissions that (1) he never met Sonia in person; (2) his belief that he was in a romantic relationship with Sonia was a product of his own imagination and fantasy; (3) other than asking Sonia to provide him with pictures of herself, Plaintiff made no other investigations and performed no other due diligence to determine Sonia's identity; and (4) he transferred over $800,000 without verifying any information about Sonia, to argue that Plaintiff cannot show the right to rely or that any reliance was reasonable. ECF No. 68-1 at 17. First, Defendants ignore the fact that the right to rely stems from the existence of a confidential or fiduciary relationship. *See Cheney Bros.*, 47 F.3d at 114 ("[T]here is no right to rely, as required to establish fraud, where there is no confidential or fiduciary relationship, and there is an arm's length transaction between mature, educated people."); *Armstrong*, 621 S.E.2d at 375 (recognizing that "[t]he right to rely must be determined in light of the plaintiffs duty to use reasonable prudence and diligence under the circumstances in

22

identifying the truth with respect to the representations made to him[,]" but also that, "a party may rely on representations without making further inquiry when a fiduciary or confidential relationship exists between the parties."). Plaintiff has shown evidence that a confidential and fiduciary relationship existed between Plaintiff and Sonia arising from the execution of the Durable Power of Attorney appointing Sonia as Plaintiff's power of attorney. ECF No. 80-10, Exh. 9, Dorff Durable Power of Attorney. Thus, Plaintiff had a right to rely on Sonia's representations "without making further inquiry." *Armstrong*, 621 S.E.2d at 375.

In addition, Plaintiff has shown sufficient evidence for a jury to reasonably conclude that he had the right to rely on Sonia's false representations.[16] First, as discussed above, the Durable Power of Attorney shows the existence of a confidential and fiduciary relationship between the parties as of the date of its execution. Thus, this is not an "arm's length transaction" usually presented in the business context. *Compare King v. Oxford*, 318 S.E.2d 125, 127-28 (S.C. Ct. App. 1984) (affirming finding that no confidential or fiduciary relationship existed when the parties entered into a contract for the sale of a corporation and that it was an arm's length transaction when the plaintiff "negotiated the contract, retained a lawyer to draft it, and had several days to study it before she signed it."). Second, application of the record to the considerations contemplated in *Thomas* does not dispositively weigh in favor of Defendants. As to the form and materiality of the representations, the personal, apparently targeted, and persistent nature of Sonia and Plaintiff's phone calls weigh in favor of a finding that Plaintiff's reliance was reasonable. *See generally* ECF No. 80-7, Exh. 6, Dorff and Turners Talk History; *see also* ECF No. 80-6, Exh. 5, Lou Dorff Dep.

---

[16] Although the fraud and misrepresentation claim is based on Sonia's representations, because Plaintiff alleges that both Sonia and Taylor-Marie engaged in the fraudulent scheme and has shown evidence of such, there is an issue of fact as to whether both Defendants engaged in a general fraudulent scheme. *See supra* at 17-20. Accordingly, the right to rely and reasonable reliance analyses apply to Taylor-Marie as well as Sonia.

at 10:4-9, 11:6-12, 12:22-13:10, 78:13-22. Plaintiff has shown that these phone calls were significantly numerous and that he spent thousands of minutes on the phone with Defendants, which is the medium in which Defendants communicated the alleged false representations that Defendants were destitute and that Sonia would take care of Plaintiff were transmitted. As to the respective intelligence, experience, age, and mental and physical conditions of the parties, the record shows that Plaintiff was of advanced age, suffered from memory issues, and employed staff to assist in handling his affairs at the time of the alleged fraud. *See* ECF Nos. 80-6, Exh. 5, Lou Dorff Dep. at 61:12-20, 86:23-87:22; 80-8, Exh. 7, Jaffe Contract; 80-9, Exh. 8, NewView Services Contract. Thus, this consideration weighs in favor of a finding that Plaintiff's reliance was reasonable. As to the relation and respective knowledge of the parties, it appears that Sonia had knowledge of Plaintiff by some means evidenced by her initially calling Plaintiff within thirty days of his divorce. ECF No. 80-6, Exh. 5, Lou Dorff Dep. at 10:4-12:21, 13:5-10, 78:13-22. In addition, the relationship appears to have been close at the time of the false representations, as Plaintiff testified that he considered Sonia a friend who he trusted. *Id.* at 27:20-25. Plaintiff also testified that he and Sonia agreed that they had a relationship that was trustworthy and that they believed in each other. ECF No. 80-6, Lou Dorff Dep. at 30:24-31:1. Thus, this consideration weighs in favor of a finding that Plaintiff's reliance was reasonable. In sum, the considerations set forth by *Thomas* do not establish that Plaintiff's reliance was unreasonable as a matter of law.

In addition, the record suggests the existence of a confidential relationship, notwithstanding any formal fiduciary relationship imposed by the Durable Power of Attorney. The South Carolina Court of Appeals has defined a confidential relationship as follows:

> Confidential relation. . . . [T]he law, in order to prevent undue advantage from the unlimited confidence or sense of duty which the relation naturally creates, requires the utmost degree of good faith in all transactions between the parties. It is not confined to any

24

specific association of parties. It appears when the circumstances make it certain that the parties do not deal on equal terms, but on the one side there is an overmastering influence, or, on the other, weakness, dependence, or trust, justifiably reposed. The mere existence of kinship does not, of itself, give rise to such relation. It covers every form of relation between parties wherein confidence is reposed by one in another, and [the] former relies and acts upon representations of the other and is guilty of no derelictions on his own part.

*Est. of Tucker ex rel. Tucker v. Tucker*, No. 2008-UP-284, 2008 WL 9841727, at *3 (S.C. Ct. App. June 4, 2008) (quoting Black's Law Dictionary 270 (5th ed.1979)); *Chapman v. Citizens & S. Nat. Bank of S.C.*, 395 S.E.2d 446, 450-451 (S.C. Ct. App. 1990). The South Carolina Court of Appeals further held that, "[c]onfidential relations are deemed to arise whenever two persons have come into such a relation that confidence is necessarily reposed by one and the influence which naturally grows out of the confidence is possessed by the other, and this confidence is abused or the influence is exerted to obtain an advantage at expense of confiding party." *Tucker*, 2008 WL 9841727, at *2 (quoting *Chapman*, 396 S.E.2d at 451). The South Carolina Court of Appeals upheld the lower court's finding that a confidential relationship existed between a mother and son when: (1) the son benefited from his relationship with his mother by accepting loans from his mother and selling property to his mother and then having her re-convey the property to him for "love and affection"; (2) the son was the dominant party in these transactions and was a businessman who dealt in real estate transactions, life insurance, and rental properties; (3) the son prepared the deeds that were signed by his mother; and (4) the mother never graduated from high school and relied upon and trusted the son during the relevant transactions. *Id.* at *3.

The record in the instant matter contains evidence from which a reasonable jury could find the existence of a confidential relationship. First, Sonia benefited from her relationship with Plaintiff by accepting significant, one-sided monetary transfers. Second, Plaintiff testified that he

25

struggled with memory issues, loneliness, and hired people to help him with medical care, housework, and his estate planning.  ECF No. 80-6, Exh. 5, Lou Dorff Dep. at 87:19-22.  Third, while Plaintiff financed all of the relevant transactions, Sonia facilitated the actual property purchases, including when Sonia arranged the purchase of Plaintiff's Florida condominium which resulted in the title to such property naming Sonia and Plaintiff as joint tenants with a right of survivorship when Plaintiff had not instructed Sonia to create an interest in that property for herself.  ECF No. 80-6, Lou Dorff Dep. at 72:1-73:25.  Fourth, regarding the reason why Plaintiff appointed Sonia to be his power of attorney, Plaintiff testified that he and Sonia agreed that they had a relationship that was trustworthy and that they believed in each other, and also that she was a friend.  *Id.* 30:24-31:1.  Plaintiff also testified that, when discussing the power of attorney with Sonia, he told her that he trusted her as a dear friend and honest person who would "act as a friend should act."  *Id.* at 31:20-24.  Plaintiff further testified that the entire reason for creating a power of attorney was to appoint a guardian as a part of his estate plan.  *Id.* at 27:10-16.  The fact Plaintiff chose Sonia as his power of attorney suggests the existence of a confidential relationship.  Accordingly, Defendants' focus on Plaintiff's admissions as to his lack of "due diligence" and loose characterization of the parties' relationship as a romantic fantasy do not establish, as a matter of law, that Plaintiff did not have a right to rely on the representations.

Defendants also contend that Plaintiff admitting that the transfers were voluntary and motivated by his charitable desire to help, rather than by reliance on any representations causes the fraud claim to fail as a matter of law.  ECF No. 68-1 at 17.  Defendants point to Plaintiff's testimony that he purchased the South Carolina property for Sonia and that he had never met or seen Sonia prior to transferring the money to Sonia for such purchase.  ECF No. 68-2, Exh. A, Dorff Dep. at 19:10-25.  Other deposition testimony, does show that Plaintiff admitted the majority

of the transfers were voluntary and that Plaintiff made the transfers because, "that's who [he] is[,]" and that he had given to his children and others throughout his life. ECF No. 80-6, Exh, 5, Lou Dorff Dep. at 87:11-18. Plaintiff also testified that he made the decisions to make the transfers himself, on the facts that he thought Sonia needed some help. *Id.* at 75:9-14. Since Plaintiff testified that he "made the decision on the facts that [he] thought that she needed some help[,]" Defendants' argument is unpersuasive. *Id.* In addition, Plaintiff testified that, regarding whether Sonia promised anything in exchange for the transfers, that Sonia promised that she would take care of him. ECF No. 68-2. Exh. A, Dorff Dep. at 88:20-23. In view of this testimony, a reasonable jury could conclude that Plaintiff actually relied on Sonia's misrepresentations in making the transfers.

### Justifiable Reliance

Issues of reliance are ordinarily resolved by the finder of fact. *Quail Hill, LLC*, 692 S.E.2d at 508 (S.C. 2010) (citing *McLaughlin v. Williams*, 665 S.E.2d 667, 671 (S.C. Ct. App. 2008)); *Snyder v. Auto-Owners Ins. Co.*, 618 F. Supp. 3d 292, 306 (D.S.C. 2022). A determination of justifiable reliance involves the evaluation of the totality of the circumstances, which includes the positions and relations of the parties. *Isaac*, 915 S.E.2d at 497 (citing *Quail Hill, LLC*, 692 S.E.2d at 508); *Snyder*, 618 F. Supp. 3d at 304.

As discussed thoroughly above, in view of the totality of the circumstances, Plaintiff has shown sufficient evidence for a jury to reasonably conclude that his reliance on Sonia's representations was justifiable and reasonable.[17]

---

[17] Although the fraud and misrepresentation claim is based on Sonia's representations, because Plaintiff alleges that both Sonia and Taylor-Marie engaged in the fraudulent scheme and has shown evidence of such, there is an issue of fact as to whether both Defendants engaged in a general fraudulent scheme. *See supra* at 17-20. Accordingly, the justifiable reliance analysis applies to Taylor-Marie as well as Sonia.

*Conclusion*

Based on the foregoing, the undersigned recommends that the district court deny Defendants' Motion for Summary Judgment as to the Fifth Cause of Action asserting fraud and misrepresentation.

**Unjust Enrichment**

In the First Cause of Action, Plaintiff asserts a claim for unjust enrichment alleging that Defendants manipulated and exploited Plaintiff, Plaintiff conferred a benefit on Defendants, Defendants realized the benefit, Defendants retained the benefit, and such retention is unjust without Defendants paying the value of the benefit to Plaintiff.  ECF No. 1 ¶¶ 66-71.

Defendants contend that Plaintiff fails to establish the elements to recover for unjust enrichment as a matter of law because the transfers that Plaintiff made to Defendants were voluntary gifts and because Plaintiff knew and approved of Defendants' use of the transferred funds.  ECF No. 68-1 at 9-12.  Plaintiff contends that the transfers were not voluntary gifts or legitimate transactions, but rather the result of Defendants scamming, defrauding, and unduly influencing Plaintiff.  ECF No. 80 at 13-16.

Under South Carolina law, a party may be unjustly enriched when the party "has and retains benefits or money which in justice and equity belong to another."  *See, e.g.*, *Rega v. Rega*, C/A No. 1:19-cv-259-JMC-PJG, 2020 WL 5747885, at *7 (D.S.C. Sept. 25, 2020), *R&R adopted by* 2020 WL 7706620 (D.S.C. Dec. 28, 2020); *Dema v. Tenet Physician Servs.-Hilton Head, Inc.*, 678 S.E.2d 430, 434 (S.C. 2009).  "To recover restitution in the context of unjust enrichment, the plaintiff must show: (1) he conferred a non-gratuitous benefit on the defendant; (2) the defendant realized some value from the benefit; and (3) it would be inequitable for the defendant to retain the benefit without paying the plaintiff for its value."  *Rega*, 2020 WL 5747885, at *7 (quoting *Inglese v. Beal*, 742 S.E.2d 687, 691 (S.C. Ct. App. 2013).  "For restitution to be warranted, the

28

plaintiff must confer the benefit nongratuitously: that is, it must either be (1) at the defendant's request or (2) in circumstances where the plaintiff reasonably relies on the defendant to pay for the benefit and the defendant understands or ought to understand that the plaintiff expects compensation and looks to him for payment." *Niggel Assocs., Inc. v. Polo's of N. Myrtle Beach, Inc.*, 374 S.E.2d 507, 509 (S.C. Ct. App. 1988); *see Inglese*, 742 S.E.2d at 691 ("[T]he benefit must be non-gratuitous, either because it was conferred at [the defendant's] request or because the circumstances were such that [the plaintiff can] reasonably rely on [the defendant] for repayment." (citing *Campbell v. Robinson*, 726 S.E.2d 221, 228 (S.C. Ct. App. 2012). Thus, "[i]t is not enough that the defendant has knowledge of the plaintiff's conduct; [the defendant] must have induced the plaintiff to confer the benefit." *Niggel Assocs., Inc.*, 374 S.E.2d at 509. Whether restitution should be required is a question to be decided on the facts of each case. *Id.*

Fraud is one of the principal sources of unjust enrichment and of restitution as a remedy. *See United States v. Mccomber*, No. 24-4376, 2026 WL 266808, at *12 (4th Cir. Feb. 2, 2026) (recognizing that "[f]raud is one of the principal grounds for restitution and one of the principal sources of unjust enrichment.") (quoting Restatement (Third) of Restitution & Unjust Enrichment § 13 & Cmt. a.)); *Larisa's Home Care, LLC v. Nichols-Shields*, 404 P.3d 912, 922 (Or. 2017) (recognizing that the general rule regarding transfers induced by fraud is that "[a] transfer induced by fraud or material misrepresentation is subject to rescission and restitution. The transferee is liable in restitution as necessary to avoid unjust enrichment.") (quoting Restatement (Third) of Restitution & Unjust Enrichment § 13(1)). Based upon the analysis above finding that genuine issues of material fact exist as to Plaintiff's fraud and misrepresentation claim, summary judgment is precluded as to Plaintiff's unjust enrichment claim and as to the availability of restitution as a remedy. Nonetheless, the undersigned considers the parties' contentions below.

29

Defendants first contend that voluntary gifts cannot form the basis of unjust enrichment. ECF No. 68-1 at 10.  Defendants point to Plaintiff's testimony that Sonia did not request or ask Plaintiff to transfer money for the purchase of the South Carolina or New York properties.  ECF No 68-2, Exh. A, Dorff Dep. at 82:22-25, 83:1-15, 103:11-16.   Defendants further point to Plaintiff's testimony that: (1) he transferred money to Sonia because he "felt that [he] was in a better position" and believed in "sharing it with someone that doesn't [have resources]"; and (2) his intentions were never to put Sonia in a position with him where she would be beholden to him on a future date. *Id.* at 18:12-25, 108:9-22.  Defendants further point to Plaintiff's lack of testimony as to the existence of any agreement between the parties for repayment.  ECF No. 68-1 at 11.  Defendants argue that Plaintiff's admissions establish donative intent and that Plaintiff's testimony establishes that he desired for Sonia to keep the properties.  *Id.*  Ultimately, Defendants argue that because Plaintiff admitted that he made voluntary transfers without expectation of repayment, such transfers are gratuitous and gifts, which are not recoverable under unjust enrichment.  *Id.*

Defendants also contend that Plaintiff's knowledge and approval of Defendants' use of the transferred money precludes Plaintiff's unjust enrichment claim.  ECF No. 68-1 at 11.  Defendants point to Plaintiff's testimony that: (1) it was his choice to transfer the money to Defendants; (2) he knew how the money was being used; (3) he was "good with the fact" that the three properties were purchased and was "okay with" such purchases, at the time, and otherwise would not have purchased the properties.  ECF Nos. 68-2, Exh. A, Dorff Dep. at 71:8-12; 114:9-18; ECF No. 1 ¶¶ 55-57.   Defendants argue that Plaintiff's knowledge and approval establish that he received "exactly what he bargained for—the satisfaction of helping [Sonia]."  ECF No. 68-1 at 12.

Plaintiff characterizes the transfers differently.  ECF No. 80 at 14-16.  Plaintiff argues that Defendants did not simply accept gifts.  *Id.* at 14.  Rather, Defendants systematically lied about

their financial condition to trigger Plaintiff's benevolence and promised Plaintiff that they would take care of him in exchange for the funds. ECF No. 80-6, Ex. 5, Lou Dorff Dep. at 88:20-23. In support, Plaintiff points to the same contradictions between the financial documents that Sonia submitted to the family court, the family court final order, and Sonia's representations to Plaintiff that he pointed to for the fraud and misrepresentation claim. *See* 80-4, Exh. 3, Sonia Turner Financial Declaration; 80-5, Exh. 4, Sonia Turner Aff.; 80-13, Exh. 12, Final Order Sonia Turner Family Ct. Case, 80-15, Exh. 14, Nov. 3, 2021 Emails. Plaintiff further argues that, at the time of the transfers, Plaintiff testified that he did not know that he was being manipulated. ECF No. 80-6, Exh. 5, Lou Dorff Dep. at 47:14-48:3. Plaintiff also points to his testimony that it was not always his choice to spend, share, or transfer the money to Defendants. *Id.* at 107:12-15. Plaintiff also argues that his testimony that Defendants were not using the transferred money in the manner in which Plaintiff transferred the money for, including by putting money in a different bank account, refutes Defendants' arguments that the transfers were voluntarily made with informed consent. *Id.* at 84:14-18. Plaintiff also characterizes himself as a lonely and elderly man who was scammed, evidenced by him executing the Durable Power of Attorney naming Sonia as his niece for conversational convenience and when Plaintiff did not understand what a power of attorney was. *Id.* at 28:8-9, 31:5-14; ECF No. 80-10, Exh. 9, Dorff Durable Power of Attorney.

As discussed above, based on Sonia's submissions to the family court, the family court's final order, and Sonia's representations made to Plaintiff in the November 3, 2021 emails, a genuine issue of material fact exists as to whether Sonia made false representations to Plaintiff regarding her financial state at the time of the transfers. *See supra* at 17-20. Plaintiff testified that he made the transfers to Defendants based on Sonia's representations as to her financial status. ECF No. 68-2, Exh. A, Dorff Dep. at 75:9-14. In addition, Plaintiff testified that Sonia promised

to take care of him as he aged in exchange for the transfers. *Id.* at 88:20-23. A reasonable jury could conclude that these representations induced Plaintiff to make the transfers, and thus a genuine issue of material fact exists as to whether the transfers were gratuitous, despite Plaintiff's admissions that Defendants did not explicitly request that Plaintiff purchase the South Carolina and New York properties. *See Niggel Assocs., Inc.*, 374 S.E.2d at 509 ("Thus, "[i]t is not enough that the defendant has knowledge of the plaintiff's conduct; [the defendant] must have induced the plaintiff to confer the benefit."). Even in the absence of fraudulent intent, if Sonia's representations created a mistake of fact as to her financial condition, summary judgment on the unjust enrichment claim is precluded. *Wachovia Bank of S.C., N.A. v. Thomasko*, 529 S.E.2d 554, 556-57 (S.C. Ct. App. 2000) (granting summary judgment to a bank who mistakenly overpaid a client when exchanging foreign currency and recognizing the legal proposition that "where money is paid under a mistake of fact, to a person who has no ground in conscious to claim it, the person paying it may recover it back." (quoting *Pilot Life Ins. Co. v. Cudd*, 36 S.E.2d 860, 863 (S.C. 1945)). Ultimately, under these circumstances, where Sonia initially and anonymously contacted Plaintiff, continued contacting Plaintiff relentlessly, promised Plaintiff that she would take care of him as he aged, represented to Plaintiff that she was financially destitute while she was aware of Plaintiff's likely response, and actually did not give Plaintiff anything in return, a reasonable jury could find that Defendants keeping the benefits which Plaintiff conferred upon them is inequitable.

Based on the foregoing, the undersigned recommends that the district court deny Defendants' Motion for Summary Judgment as to Plaintiff's First Cause of Action.

### *Exploitation of Vulnerable Adult*

In the Second Cause of Action, Plaintiff asserts a claim for exploitation under the South Carolina Omnibus Adult Protection Act, S.C. Code Ann. § 43-35-5, *et seq*. ("South Carolina Act").

32

ECF No. 1 ¶¶ 72-79.  In the Third Cause of Action, Plaintiff asserts a claim for exploitation under

Florida's Adult Protective Services Act, Fla. Stat. Ann. § 415.101, *et seq*. ("Florida Act").  ECF

No. 1 ¶¶ 80-88.  Plaintiff alleges that he is a "vulnerable adult" and that Defendants exploited him

within the meaning of both the South Carolina Act and the Florida Act.  *Id.*  ¶¶ 72-88

### *The South Carolina Act Generally*

The South Carolina Act was enacted to prevent the abuse and exploitation of  "vulnerable

adults."  *Walling by Walling v. Bank of Am., N.A.*, 782 F. Supp. 3d 280, 290 (D.S.C. 2025) (citing

*Williams v. Watkins*, 665 S.E.2d 243, 245 (S.C. Ct. App. 2008)); *Williams-Garrett v. Murphy*, 106

F. Supp. 2d 834, 841 (D.S.C. 2000).  The South Carolina Act provides for "a private civil cause of

action that may be brought against [any natural person] … based on an action or failure to act that

otherwise constitutes … exploitation under [the South Carolina Act]."  S.C. Code Ann. § 43-35-

80(A); *see Williams-Garrett*, 106 F. Supp. 2d at 843 (finding that a private civil cause of action

exists "for the act of abusing, neglecting, or exploiting as defined in the [South Carolina] Act

generally.").  The South Carolina Act defines "vulnerable adult" and "exploitation" as follows:

> "Vulnerable adult" means a person eighteen years of age or older who has a physical or mental condition which substantially impairs the person from adequately providing for his or her own care or protection. This includes a person who is impaired in the ability to adequately provide for the person's own care or protection because of the infirmities of aging including, but not limited to, organic brain damage, advanced age, and physical, mental, or emotional dysfunction.  A resident of a facility is a vulnerable adult….
>
> (3) "Exploitation" means:…
>
> (b) an improper, unlawful, or unauthorized use of the funds, assets, property, power of attorney, guardianship, or conservatorship of a vulnerable adult by a person for the profit or advantage of that person or another person; or
>
> (c) causing a vulnerable adult to purchase goods or services for the profit or advantage of the seller or another person through: (i) undue

33

influence, (ii) harassment, (iii) duress, (iv) force, (v) coercion, or (vi) swindling by overreaching, cheating, or defrauding the vulnerable adult through cunning arts or devices that delude the vulnerable adult and cause him to lose money or other property.

S.C. Code Ann. § 43-35-10(3)(b), (3)(b), (11).

### *Vulnerable Adult*

Whether an individual meets the statutory definition of "vulnerable adult" pursuant to the South Carolina Act is a question of fact. *See Williams-Garrett v. Murphy*, 106 F. Supp. 2d 834, 843 (D.S.C. 2000) ("Whether Ms. Williams–Murphy actually was a vulnerable adult at the time of the acts in question is clearly a question of fact incapable of being answered as a matter of law.").

Defendants contend that Plaintiff was not a vulnerable adult at the time that the alleged exploitation occurred. ECF No. 68-1 at 12-13. In support, Defendants rely on Plaintiff's testimony that: (1) he could handle his own affairs; (2) he decided to transfer funds to Defendants freely, voluntarily, and knowingly; (3) he lives independently, despite his advanced age; (4) he has a driver's license and drives; and (5) he does his own grocery shopping, handles his own banking, and makes his own decisions regarding his medical care. ECF No. 68-2, Dorff. Dep.,. Defendants further rely on Plaintiff's testimony denying that he was helpless or vulnerable. ECF Nos. 68-1 at 13; 68-2, Dorff Dep. at 60:10-25, 63:1-14. Defendants also note that terms commonly associated with exploitation are absent from Plaintiff's testimony, including "deception, coercion, undue influence, trickery, mental capacity, dementia, [and] Alzheimer's." ECF No. 68-1 at 13.

Plaintiff contends that living independently and denying being helpless does not preclude him from being considered a vulnerable adult. ECF No. 80 at 16. Plaintiff points to the South Carolina Act defining "vulnerable adult" an adult who has a "physical or mental condition which substantially impairs the person from adequately providing for his or her own care or protection," including "a person who is impaired in the ability to adequately provide for the person's own care

34

or protection because of the infirmities of aging, including … organic brain damage, advanced age, and physical, mental, or emotional dysfunction." *Id.* (quoting S.C. Code Ann. § 43-35-10(11)). Plaintiff argues that calling Sonia his niece in the Durable Power of Attorney is evidence that he was not adequately protecting his own legal and financial interests. ECF No. 80-9, Exh. 10, Dorff Durable Power of Attorney. Plaintiff also argues that the fact he sent $866,264.20 to two people he had never met or seen, and named one as his power of attorney, is evidence that he had a physical or mental condition that substantially impaired his ability to protect his own legal and financial interests. ECF No. 80 at 16. Plaintiff points to his testimony that he did not understand what a power of attorney was at the time that he executed one. ECF No. 80-6, Exh. 6, Lou Dorff Dep. at 31:5-14. Plaintiff also points to his testimony that he was "completely losing his memory" as direct evidence of mental dysfunction. ECF No. 80-6 at 61:17. Plaintiff also points to his testimony that he does not have the capability to remember for long periods of time or the capability to read quickly. *Id.* at 86:25-87:3. Plaintiff further argues that his reliance on paid caregivers who work more than forty hours per week to manage his day-to-day tasks, health-related care, and finances, as well as clean his house and drive him, evidence that Plaintiff is a vulnerable adult. *Id.* at 63:16-21, 96:16-24; ECF Nos. 80-8, Exh. 7, Jaffe Contract; 80-9, Exh. 8, NewView Services Contract. Plaintiff also points to his testimony that he gets lost while driving as evidence of impairment. ECF No. 80-6, Exh. 5, Lou Dorff Dep. at 60:23-61:11. As further evidence of impairment sufficient to meet the statutory definition for "vulnerable adult," Plaintiff points to his testifying as to his incorrect date of birth, failure to accurately testify as to the year that he graduated college, and testimony that his age "is taking a hold of me." *Id.* at 8:7-8, 12:9-11, 87:19-22. Finally, as to Defendants' reliance on Plaintiff's testimony that he was not helpless or vulnerable, Plaintiff argues that such subject statement is not dispositive, and that a person

35

suffering from dementia or cognitive decline may not recognize their own vulnerability.  ECF No. 80 at 17.

Plaintiff has shown sufficient evidence to create a genuine issue of material fact from which a reasonable jury could conclude that Plaintiff meets the statutory definition of "vulnerable adult" pursuant to the SC Act.  *See Williams-Garrett v. Murphy*, 106 F. Supp. 2d 834, 843 (D.S.C. 2000) ("Whether Ms. Williams–Murphy actually was a vulnerable adult at the time of the acts in question is clearly a question of fact incapable of being answered as a matter of law.").  Plaintiff's testimony that Defendants offer as evidence of Plaintiff  "admitting" that he was not helpless or vulnerable does not foreclose a reasonable jury from concluding that Plaintiff is a vulnerable adult in view of Plaintiff's complete testimony.   This is especially true when Plaintiff testified that he is independent, yet presented evidence that he employs several individuals who provide support with caregiving.  In addition, Plaintiff testified that he suffered from significant memory loss until recently when he began taking a new medication, and it appears that Plaintiff suffered from such memory loss during the relevant time period.  Accordingly, a genuine issue of material fact exists which precludes summary judgment.

### *Exploitation*

The issue of whether an individual's conduct meets the statutory definition of "exploitation" pursuant to the South Carolina Act is a question of fact.  *See Williams-Garrett*, 106 F. Supp. 2d at 843 ("[I]n light of the contested facts surrounding the actual events of the coin 'transaction,' whether Mr. Murphy's actions constituted abuse, neglect or exploitation under the Act also remains a question of fact.").

Defendants, primarily relying on Plaintiff's testimony that he was not helpless or vulnerable and that he made the decisions to make the transfers himself "on the facts that I thought

36

[Sonia] needed some help[,]" contend that no testimony establishes that such transfers were obtained improperly. ECF No. 68-2, Exh. A, Dorff Dep. at 75:9-14. Defendants further argue that Plaintiff never testified that he did not understand the financial transactions or that he was pressured, coerced, swindled, or deceived. ECF No. 68-1 at 13.

Plaintiff, referencing his arguments made regarding the unjust enrichment claim, contends that Defendants deceived him to trigger his benevolence. ECF No. 80 at 17, *see supra* at 30-31. Plaintiff also points to his testimony that although he did not know it at the time, he knows now that the transfers were "in ill manner." ECF No. 80-6, Exh. 5, Lou Dorff Dep. at 47:14-48:3. Plaintiff sets out such deception: (1) Sonia told Plaintiff that she had no place to live due to the alleged "forced sale" of her marital home; (2) Plaintiff sent $427,945 to Sonia for her to purchase the Simpsonville home; (3) Plaintiff thought he was sending the $427,945 to Sonia, but the money was sent to Taylor-Marie; (4) However, Sonia did have a place to live, according to her financial declaration swearing that she was living in her marital home. ECF Nos. 80 at 17-18. Plaintiff further points to the transfers made while Sonia was his Power of Attorney, wherein Plaintiff transferred at least $370,002.50 in alleged "gifts" to Defendants through Defendants' joint bank account. ECF Nos. 80-2, Exh. 1, Funds to Sonia Turner; 80-3, Exh. 2, Funds to Taylor-Marie Turner. Plaintiff argues that Sonia accepting "gifts" for herself and Taylor-Marie while serving as a fiduciary was improper and thus meets the statutory definition of "exploitation" under the South Carolina Act. ECF No. 80 at 18. Plaintiff asserts that Sonia was obligated to act in Plaintiff's best interest and that accepting "gifts" totaling over $370,002.50 from Plaintiff whom she had never met was not in his best interest. *Id.*

Plaintiff has shown sufficient evidence to create a genuine issue of material fact from which a reasonable jury could conclude that Defendants exploited Plaintiff within the meaning of the

37

South Carolina Act. The South Carolina Act contemplates exploitation by improper, unlawful, or unauthorized use of funds, assets, property, or power of attorney for the profit of advantage of a defendant. S.C. Code Ann. § 43-35-10(3)(b). The South Carolina Act also contemplates exploitation by causing a vulnerable adult to purchase goods or services for the profit or advantage of another person through undue influence, coercion, or swindling by overreaching or defrauding. *Id.* § 43-35-10(3)(b). Defendants accepted at least over $370,002.50 in "gifts" while Sonia was Plaintiff's power of attorney. ECF Nos. 80-2, Exh. 1, Funds to Sonia Turner; 80-3, Exh. 2, Funds to Taylor-Marie Turner. Further, the Florida condominium that was purchased was initially titled to Plaintiff and Sonia in a joint tenancy with a right of survivorship absent Plaintiff's instruction for Sonia to grant herself such interest. Further, while Sonia was Plaintiff's power of attorney, the New York and England properties that were purchased were initially titled to Sonia alone. ECF No. 68-2, Exh. A. Lou Dorff Dep. at 91:19-92:1. In addition, based on the undersigned's conclusion as to the fraud and misrepresentation claim, genuine issues of material fact exist as to whether Defendants engaged in fraudulent conduct which would suffice as exploitation pursuant to the South Carolina Act. *See supra* at 16-28. A reasonable jury could conclude based on this evidence that exploitation by improper or unlawful use of a power of attorney for the profit or advantage of Defendants. A jury could reasonably conclude that the admissions upon which Defendants primarily rely suggests that Plaintiff's decision to make the transfers was tainted by Sonia's representations that she needed some help.

### Conclusion

Based on the foregoing, Plaintiff has met his burden in showing evidence sufficient to create a genuine issue of material fact from which a reasonable jury could conclude that during the relevant time period he was a vulnerable adult and that Defendants exploited him in violation of

the South Carolina Act. Therefore, the undersigned recommends that the district court deny Defendants' Motion for Summary Judgment as to Plaintiff's Second Cause of Action.

### *The Florida Act Generally*

Under the Florida Act, similar to the South Carolina Act, a private cause of action exists for a "vulnerable adult" who has been "exploited." Fla. Stat. Ann. § 415.1111; *Grasso v. Grasso*, C/A No. 8:13-cv-3186-T-33AEP, 2016 WL 1271545, at *5 (M.D. Fla. Mar. 31, 2016) ("Section 415.1111 states, in part: '[a] vulnerable adult who has been abused, neglected, or exploited as specified in this chapter has a cause of action against any perpetrator and may recover actual and punitive damages for such abuse, neglect, or exploitation.'") (citation omitted). The Florida Act defines "vulnerable adult" and "exploitation" as follows:

> (28) "Vulnerable adult" means a person 18 years of age or older whose ability to perform the normal activities of daily living or to provide for his or her own care or protection is impaired due to a mental, emotional, sensory, long-term physical, or developmental disability or dysfunction, or brain damage, or the infirmities of aging.
>
> …
>
> (8)(a) "Exploitation" means a person who:
>
> 1. Stands in a position of trust and confidence with a vulnerable adult and knowingly, by deception or intimidation, obtains or uses, or endeavors to obtain or use, a vulnerable adult's funds, assets, or property with the intent to temporarily or permanently deprive a vulnerable adult of the use, benefit, or possession of the funds, assets, or property for the benefit of someone other than the vulnerable adult; or
>
> 2. Knows or should know that the vulnerable adult lacks the capacity to consent, and obtains or uses, or endeavors to obtain or use, the vulnerable adult's funds, assets, or property with the intent to temporarily or permanently deprive the vulnerable adult of the use, benefit, or possession of the funds, assets, or property for the benefit of someone other than the vulnerable adult.

39

(b) "Exploitation" may include, but is not limited to:

1. Breaches of fiduciary relationships, such as the misuse of a power of attorney or the abuse of guardianship duties, resulting in the unauthorized appropriation, sale, or transfer of property;

2. Unauthorized taking of personal assets;

3. Misappropriation, misuse, or transfer of moneys belonging to a vulnerable adult from a personal or joint account; or

4. Intentional or negligent failure to effectively use a vulnerable adult's income and assets for the necessities required for that person's support and maintenance.

Fla. Stat. Ann. § 415.102.

### *Vulnerable Adult*

The parties did not separately argue as to whether Plaintiff qualified as a "vulnerable adult" under the Florida Act. The statutory definitions under South Carolina and Florida's statutes are substantial similar. Based on the same evidence discussed regarding the South Carolina Act, the undersigned finds that there is a genuine issue of material fact from which a reasonable jury could conclude that Plaintiff qualified as a vulnerable adult under the Florida Act. *See*, *e.g.*, *Grasso*, 2016 WL 1271545, at *6-9 (M.D. Fla. Mar. 31, 2016) (finding that there was sufficient evidence from which a jury could find that a grandmother was a "vulnerable adult" pursuant to Fla. Stat. 415.102(28) when there was evidence that she had difficulty walking, hearing, and seeing, and there was testimony that she was grieving the deaths of her husband and son).

### *Exploitation*

Similarly, the parties do not separately argue as to whether Defendants' conduct constituted "exploitation" under the Florida Act. The statutory definitions for exploitation under the South Carolina and Florida statutes are more different than the definitions for vulnerable adult. Under the Florida Act, exploitation occurs when a person who "[s]tands in a position of trust and

40

confidence with a vulnerable adult and knowingly, by deception or intimidation, obtains or uses, or endeavors to obtain or use, a vulnerable adult's funds, assets, or property with the intent to temporarily or permanently deprive a vulnerable adult of the use, benefit, or possession of the funds, assets, or property for the benefit of someone other than the vulnerable adult …." Fla. Stat. Ann. § 415.102(8)(a)(1).   Furthermore, the Florida Act states that exploitation may include breaches of fiduciary relationships, such as the misuse of a power of attorney … resulting in the unauthorized appropriation, sale, or transfer of property …." *Id.* § 415.102(b).  Based on the same evidence presented regarding the South Carolina Act, the undersigned finds that there is a question of fact from which a reasonable jury could conclude that Defendants' conduct constituted exploitation under the Florida Act.  *See, e.g., Grasso*, 2016 WL 1271545, at *9-10 (finding that there was sufficient evidence from which a jury could find that the defendant-granddaughters exploited their grandmother pursuant to Fla. Stat. Ann. § 415.102(8)(a)(1) when one of the granddaughters had a formal fiduciary relationship with the grandmother and witnessed a form naming one of the granddaughters as an income beneficiary to the grandmother's trust, attempted to obtain a debit card linked to the grandmother's checking account, and was involved with revising the grandmother's trust).

### *Conclusion*

Based on the foregoing, the undersigned recommends that the district court deny Defendants' Motion to Dismiss as to Plaintiff's Third Cause of Action.

### **Breach of Fiduciary Duty**

In the Fourth Cause of Action, Plaintiff asserts a claim against Sonia for breach of fiduciary duty and asserts a claim against Taylor-Marie for aiding and abetting breach of fiduciary duty. ECF No. 1 ¶¶ 89-96.  Plaintiff alleges that Sonia had a fiduciary relationship with Plaintiff and that

41

Taylor-Marie was aware of such fiduciary relationship. *Id.* ¶¶ 90-91. Plaintiff further alleges that Sonia breached the fiduciary relationship, which Taylor-Marie aided and abetted, by manipulating and exploiting Plaintiff, causing Plaintiff to lose funds and assets, and depriving Plaintiff of such funds and assets. *Id.* ¶¶ 92-93.

Defendants contend that no record evidence showing that Sonia breached her fiduciary duties to Plaintiff exists. ECF No. 68-1 at 14-15. As to the purchase of the South Carolina property, Defendants point to the fact that Plaintiff transferred the funds for such purchase approximately eleven months before Plaintiff executed the Durable Power of Attorney. *See* ECF Nos. 80-3, Exh. 2, Funds to Taylor-Marie Turner; 80-10, Exh. 9, Dorff Durable Power of Attorney. Defendants also point to Plaintiff's testimony that Sonia never asked Plaintiff to purchase the South Carolina property. ECF No. 68-2, Exh. A, Dorff Dep. at 82:22-25. As to the purchase of the New York property, Defendants point to Plaintiff's testimony that he was not influenced into buying the New York property and that he "chose to buy it because it would be a good investment even if it wasn't used as [Sonia] was intending." *Id.* at 83:1-10. Generally, Defendants point to Plaintiff's testimony that he chose, agreed, and allowed Sonia to take title to the properties in her name, and that "[Plaintiff] bought [the three properties] for [Sonia]." *Id.* at 91:19-92:1.

Plaintiff contends that the $316,400 in transfers to Sonia through Defendants' joint bank account and the $53,602.50 in checks issued to Sonia which occurred after Sonia was appointed as Plaintiff's Power of Attorney are presumptively invalid because of fiduciary relationship imposed by the Durable Power of Attorney. ECF No. 80 at 19. Plaintiff also contends that evidence of Sonia's bad faith and self-dealing in violation of her fiduciary duties exists. *Id.* at 20. In support, Plaintiff points to his testimony regarding the purchase of the New York property as evidence that he viewed himself as having a financial interest in the New York property despite

Sonia titling such property solely in her name. ECF No. 80-6, Exh. 5, Lou Dorff Dep. at 83:11-15. Plaintiff also points to the purchase of the England property and argues that Sonia violated her fiduciary duties by failing to memorialize terms for a loan to repay Plaintiff for purchasing such property. ECF No. 80-17, Exh. 16, Feb. 25, 2023 Text Msg Taylor-Marie to Dorff. Plaintiff also contends that Sonia's failure to disclose Plaintiff's transferred money in her financial documents submitted to the family court evidences Sonia's bad faith. ECF Nos. 80-4, Exh. 3, Sonia Turner Financial Decl.; 80-5, Exh. 4, Sonia Turner Aff. Plaintiff also points to other evidence on the record showing Sonia's bad faith, including: (1) the November 3, 2021 emails and argues that Sonia lying about her being scared about the family court proceeding when the proceeding had actually concluded; (2) Sonia failing to disclose to Plaintiff the substantial amount of money that she received from the sale of her marital home or lump sum payment from her ex-husband pursuant to Judge Conits' final order; (3) Sonia representing to Plaintiff that she was financially destitute so that Plaintiff would continue transferring money to Defendants; and (4) Sonia failing to disclose to Plaintiff that she had the Florida condominium titled to her and Plaintiff as joint tenants with a right of survivorship. ECF Nos. 80-13, Exh. 12, Final Order Sonia Turner Family Ct. Case; 80-15, Exh. 14, Nov. 3, 2021 Emails; 80-6, Exh. 5, Lou Dorff Dep. at 72:1-73:25.

To succeed on the breach of fiduciary duty claim[18], Plaintiff must show: (1) the existence of a fiduciary duty; (2) breach of that fiduciary duty; and (3) that the breach proximately caused

---

[18] Plaintiff asserts that because the Durable Power of Attorney relies on Florida law and was executed in Florida, Florida law governs the breach of fiduciary duty and aiding and abetting breach of fiduciary duty claim. ECF Nos. 80 at 19 (citing S.C. Code Ann. § 62-8-107 ("The meaning and effect of a power of attorney is determined by the law of the jurisdiction indicated in the power of attorney and, in the absence of an indication of jurisdiction, by the law of the jurisdiction in which the power of attorney was executed."); 80-10, Exh. 9, Dorff Durable Power of Attorney at 10-11 (showing that the document was executed in Florida and showing provisions citing Florida statutes). The Court finds no meaningful difference in South Carolina and Florida

his damages.  *See*, *e.g.*, *Grasso v. Grasso*, 131 F. Supp. 3d 1303, 1315 (M.D. Fla. 2015); *Reich v. Reich*, C/A No. X03-cv-21-6147841-S, 2025 WL 2650328, at \*17 (Conn. Super. Ct. Sept. 8, 2025) (citing *Gracey v. Eaker*, 837 So.2d 348, 353 (Fla. 2002)).  An agent who accepts appointment of a power of attorney is a fiduciary.  Fla. Stat. Ann. § 709.2114(1).  Under Florida law, notwithstanding the provisions of a power of attorney, an agent who has accepted appointment of the power of attorney: (1) may not act contrary to the principal's reasonable expectations actually known by the agent; (2) must act in good faith; (3) may not act in a manner that is contrary to the principal's best interest, unless an exception applies; (4) must act loyally for the sole benefit of the principal; and (5) must act so as not to create a conflict of interest that impairs the agent's ability to act impartially in the principal's best interest.  *See id.* § 709.2114(1)-(2).

The Durable Power of Attorney includes terms allowing for Sonia to "accept as a gift … buy … receive, or otherwise acquire an interest in real [or tangible personal] property…."  ECF No. 80-10, Exh. 9, Dorff Durable Power of Attorney at Art. II §§ 2.3-2.4.  In addition, the Durable Power of Attorney includes terms allowing for Sonia to "create … any ownership arrangement … in which [Plaintiff is] a joint tenant owning an interest with one or more other persons with rights of survivorship."  *Id.* at Art. III.  However, the terms of the Durable Power of Attorney also set out that Sonia "shall not be relieved from liability for breach of duty committed dishonestly, with improper motive, or with reckless indifference to [Plaintiff] or the purposes of [the] durable power of attorney."  *Id.* at Art. VII.

Viewing the evidence in the light most favorable to the Plaintiff, here is an issue of fact as to whether Plaintiff intended to have an interest in or believed that he had an interest in the New

---

law as applied in this manner and thus analyzes the breach of fiduciary duty and aiding and abetting breach of fiduciary claim under Florida law.

York property based on his testimony that he believed he could sell the property at a later time. ECF No. 80-6, Exh. 5, Lou Dorff Dep. at 83:6-15.  In addition, Plaintiff testified that Sonia solely arranged for the purchase of the Sarasota, Florida condominium which resulted in the title to the property being held by Plaintiff and Sonia as joint tenants with a right of survivorship.  While the creation of such interest occurred before the Durable Power of Attorney was executed, there is an issue of fact as to whether Sonia's failure to disclose her interest in the property violated her fiduciary duties.  Furthermore, as discussed above regarding the fraud and misrepresentation claim, evidence of Sonia's misrepresentations made to induce the transfers while Sonia owed Plaintiff fiduciary duties create a genuine issue of material fact as to whether Sonia engaged in bad faith in violation of her fiduciary duty.  *See supra* at 16-28.

### *Aiding and Abetting*

In the Complaint, Plaintiff asserts a claim for aiding and abetting a breach of fiduciary duty against Taylor-Marie.  ECF No. 1 at ¶¶ 89-96.  The parties fail to make substantive arguments regarding such claim.  *See generally* ECF Nos. 68-1; 80.

To prove a claim for aiding and abetting the breach of a fiduciary duty under Florida law, a plaintiff must establish: (1) a fiduciary duty on the part of a primary wrongdoer; (2) a breach of that fiduciary duty; (3) knowledge of the breach by the alleged aider and abettor; and (4) the aider and abettor's substantial assistance or encouragement of the wrongdoing.  *See*, *e.g.*, *Logan v. Morgan, Lewis & Bockius LLP*, 350 So. 3d 404, 410 (Fla. Dist. Ct. App. 2022) (citing *Arbitrajes Financieros, S.A. v. Bank of Am., N.A.*, 605 F. App'x 820, 824 (11th Cir. 2015)).  As an initial matter, based on the discussion and conclusion as to the breach of fiduciary duty claim above, the first two elements for proving aiding and abetting breach of fiduciary duty are satisfied.

Plaintiff only generally argues that genuine issues of material fact exist as to whether Taylor-Marie aided and abetted in Sonia's breach of fiduciary duty. *See* ECF No. 80 at 19-21. Defendants do not make arguments regarding whether Taylor-Marie aided and abetted any breach of fiduciary duty other than to the extent Defendants argue that Sonia did not breach a fiduciary duty. *See* ECF No. 68-1 at 13-15. The Court will consider whether evidence exists sufficient to create triable issue of fact as to whether Taylor-Marie aided and abetted Sonia's breach of fiduciary duty.

The Court can see no evidence in the record that Taylor-Marie had any knowledge of Sonia's breach of fiduciary duty. There is no evidence that shows that Taylor-Marie had knowledge of the Durable Power of Attorney appointing Sonia as such. In addition, there is no evidence that Taylor-Marie substantially assisted or encouraged Sonia's breach. Regarding Taylor-Marie, Plaintiff has shown evidence that Plaintiff transferred funds to Defendants' joint bank account as a result of Sonia's misrepresentations and no evidence exists that Sonia memorialized terms for a loan agreement for the England property that Plaintiff provided the purchase money for. ECF Nos. 80-3, Exh. 2, Funds to Taylor-Marie Turner. The record contains a text message that Taylor-Marie sent to Plaintiff on February 25, 2023, which thanks Plaintiff for purchasing the England property and also states, "[Sonia] keep [Taylor-Marie] updated weekly … [Sonia] said she will write the agreement for us so I can make monthly payments." ECF No. 80-17, Exh. 16, Feb. 25, 2023 Text Msg. Taylor-Marie to Dorff. Assuming that Sonia's failure to create a loan agreement for the England property was a breach of fiduciary duty, the February 25, 2023 text message tends to show that Taylor-Marie believed that Sonia would in fact create such agreement. The record is devoid of facts linking Taylor-Marie to the purchase of the New York property or the Florida condominium. Also, to the extent that Plaintiff argues that Defendants moving the money that

Plaintiff transferred between their joint bank account and to each other's bank accounts in an effort to defraud the family court, the undersigned is not persuaded that defrauding the family court is relevant to the instant claim against Taylor-Marie.  Rather, evidence related to the family court's final order is relevant to the extent such evidence bears on Sonia's financial status.  The same reasoning applies to Taylor-Marie's financial disclosure submitted for the purchase of the England property.  ECF No. 80-16, Exh. 15, Taylor-Marie Turner Source of Funds.  Therefore, The Court can find no evidence in the record showing that Taylor-Marie knew about Sonia's breach of fiduciary duty and  substantially assisted or encouraged the breach.

Based on the foregoing, the undersigned recommends that the district court deny Defendants' Motion for Summary Judgment as to the breach of fiduciary duty claim asserted against Sonia in the Fourth Cause of Action.  However, the undersigned also recommends that the district court grant Defendants' Motion for Summary Judgment as to the aiding and abetting breach of fiduciary duty claim asserted against Taylor-Marie in the Fourth Cause of Action.

### *Constructive Trust*

In the Sixth Cause of Action, Plaintiff requests that the Court impose a constructive trust on the South Carolina and New York properties, obligate Defendants to hold such properties for the benefit of Plaintiff, and transfer such properties to Plaintiff.  ECF No. 1 ¶ 109.  Plaintiff alleges that a constructive trust is warranted under the instant circumstances.  *Id.* ¶¶ 105-108.

Under South Carolina law, "[a] constructive trust will arise whenever the circumstances under which property was acquired make it inequitable that it should be retained by the one holding the legal title." *Est. of Tucker ex rel. Tucker*, 2008 WL 9841727, at *1 (quoting *Lollis v. Lollis*, 354 S.E.2d 559, 561 (S.C. 1987).  "A constructive trust results from fraud, bad faith, abuse of confidence, or violation of a fiduciary duty which gives rise to an obligation in equity to make

restitution." *Id.* (quoting *Lollis*, 354 S.E.2d at 561). "A constructive trust arises whenever a party has obtained money which does not equitably belong to him and which he cannot in good conscience retain or withhold from another who is beneficially entitled to it as where money has been paid by accident, mistake of fact, or fraud, or has been acquired through a breach of trust or the violation of a fiduciary duty." *Id.* (quoting *SSI Med. Servs., Inc. v. Cox*, 392 S.E.2d 789, 793-94 (S.C. 1990). Although fraud is generally cited as an element to establish a constructive trust, a party need not show actual fraud. *Id.* at *2 (citing *McNair v. Rainsford*, 499 S.E.2d 488, 501 (S.C. Ct. App. 1998). Further, "equity is less than demanding and quite flexible in prescribing the elements essential to a constructive trust." *Id.* (quoting *Whitmire v. Adams*, 257 S.E.2d 160, 163 (S.C. 1979)).

Defendants argue that because Plaintiff fails to establish the elements of fraud and misrepresentation, and that because there has been no accident, mistake of fact, fraud, or acquisition through breach of trust or fiduciary duties in this matter, Plaintiff cannot establish a claim for constructive trust. ECF No. 68-1 at 17-18.

Plaintiff argues that constructive trust is an appropriate remedy because genuine issues of material fact exist as to whether fraud, mistake, or breach of fiduciary duty occurred in this matter. ECF No. 80 at 22.

Based on the undersigned's conclusions that genuine issues of material fact exist as to Plaintiff's claims, Defendants' argument that imposing a constructive trust is not an available remedy is unpersuasive. Accordingly, the undersigned recommends that the district court deny Defendants' Motion for Summary Judgment as to the Sixth Cause of Action.

### *Affirmative Defenses*

Defendants argue that Plaintiff's admissions establish Defendants' fifth and sixth affirmative defenses: (1) voluntary transfer and consent; and (2) estoppel and waiver. ECF No. 68-1 at 18-19.

Where a movant seeks summary judgment on an affirmative defense, the movant must conclusively establish all essential elements of such defense. *Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.*, 673 F.3d 294, 299 (4th Cir. 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986)).

#### *Voluntary Transfer and Consent*

In the fifth affirmative defense, Defendants assert that any transfers were voluntary and made with informed consent, without fraud, coercion, or undue influence. ECF No. 23 ¶ 69. Defendants contend that Plaintiff's admissions conclusively establish the fifth affirmative defense as a matter of law. ECF No. 68-1 at 18-19. Specifically, Defendants argue that: (1) Plaintiff admits not being helpless or vulnerable, and the decisions he made involving Sonia were his voluntary choices; (2) Plaintiff admits that it was his choice to wire hundreds of thousands of dollars to Sonia during the relevant times period; (3) Plaintiff admits transferring fund to Sonia because he "felt that [he] was in a better position" and believed in "sharing it with someone that doesn't [have resources]"; (4) Plaintiff admits that Sonia never asked him to purchase the South Carolina property; and (5) Plaintiff admits that he was not influenced into buying the New York property, and that he "chose to buy it because it would be a good investment even if it wasn't used as [Sonia] was intending." ECF No. 68-2, Exh. A, Dorff Dep. at 75:9-14, 71:8-12, 18:12-25, 82:22-25, 83:1-10.

Plaintiff argues that the fifth affirmative defense is directly refuted by the record and that genuine issues of material fact exist as to whether Plaintiff's alleged informed consent was the product of Defendants' "calculated campaign of deception." ECF No. 80 at 23. Plaintiff also argues that the existence of a fiduciary relationship, coupled with large, one-sided transfers to Sonia, whom Plaintiff had never met, creates a presumption of undue influence that Defendants have not overcome. *Id.*

As discussed herein, despite Plaintiff's deposition testimony that Defendants assert are admissions that entitle them to summary judgment, genuine issues of material fact exist.[19] As such, the fifth affirmative defense does not support granting Defendants' Motion for Summary Judgment.

### *Estoppel and Waiver*

In the sixth affirmative defense, Defendants assert that Plaintiff is estopped or has waived claims due to his own conduct, actions, and representations. ECF No. 23 ¶ 70. Defendants argue that Plaintiff's admissions support this defense. ECF No. 68-1 at 19. Defendants contend that Plaintiff's own conduct, specifically characterizing his relationship with Sonia as romantic, continuing voluntary contact for months after transfers, and approving fund usage, contradicts his current allegations and estops him from now claiming fraud. *Id.* Defendants also contend that Plaintiff's conduct constitutes waiver of any claims he may have asserted. *Id.* Defendants do not cite to any case law or other authority in support of their arguments. *See id.*

Plaintiff, relying on South Carolina case law, contends that Defendants' argument as to estoppel and waiver is without merit. ECF No. 80 at 23-24 (citing *Provident Life & Acc. Ins. Co.*

---

[19] In addition, Defendants have not cited to a case or other authority discussing this asserted affirmative defense. *See* ECF No. 68-1 at 18-19.

*v. Driver*, 317 S.C. 471, 451 S.E.2d 924 (S.C. Ct. App. 1994)). Plaintiff argues that Defendants targeted Plaintiff during a period of acute emotional and cognitive distress. *Id.* at 24. Plaintiff argues that thirty days following Plaintiff's ex-wife filing for divorce, Sonia initiated anonymous, relentless contact. *Id.* Plaintiff further argues that continued contact, viewing the relationship as romantic, and continuing allegedly approving fund usage is consistent with Defendants' ongoing manipulation. *Id.* Plaintiff also argues that many of the transfers occurred while Sonia was Plaintiff's Power of Attorney. *Id.* Plaintiff points to his testimony that it was not always his choice to transfer the money to Defendants. *Id.* Plaintiff also points to his testimony that he was not "capable of understanding" and that he was "completely losing his memory." *Id.*; ECF No. 80-6, Exh. 5, Lou Dorff Dep. at 30:8-19, 61:17-20.

Under South Carolina law, the doctrine of equitable estoppel applies when the party to be estopped: (1) engages in "conduct which amounts to a false representation, or conduct which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) [has] the intention that such conduct shall be acted upon by the other party; and (3) [has] actual or constructive knowledge of the real facts." *First Fin. Ins. Co. v. Brumbaugh*, 553 F. App'x 282, 285 (4th Cir. 2014) (quoting *Strickland v. Strickland*, 650 S.E.2d 465, 470 (S.C. 2007)). Additionally, the party asserting estoppel must demonstrate, "(1) lack of knowledge, and the means of knowledge, of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) a prejudicial change of position in reliance on the conduct of the party being estopped." *Id.* (quoting *Strickland*, 650 S.E.2d at 470). Estoppel is a flexible doctrine that requires consideration of the relative equities between the parties. *Id.* (citing *Pitts v. N.Y. Life Ins. Co.*, 148 S.E.2d 369, 371-72 (S.C. 1966)).

51

Under South Carolina law, waiver is the voluntary and intentional relinquishment of a known right. *Provident Life & Acc. Ins. Co.*, 451 S.E.2d at 928. Waiver may be implied from circumstances indicating an intent to waive. *Id.* Acts that are inconsistent with the continued assertion of a right may also give rise to a waiver. *Id.*

Defendants' arguments for the application of estoppel are unpersuasive. First, Defendants fail to show evidence that Plaintiff had actual or constructive knowledge of "the real facts." *See First Fin. Ins. Co.*, 553 F. App'x at 285. Plaintiff testified that he did not realize that he was being exploited at the relevant times, but that once he did realize that he was being exploited, he "shut down all financial aid to Sonia." ECF No. 80-6, Exh. 5, Lou Dorff Dep. at 83:16-84:22. Plaintiff further testified that he is pursuing his claims because they were "gotten in ill manner" and that he did not know that the money was transferred in such "ill manner" at the time. *Id.* at 47:19-48:3. Furthermore, the relative equities of the parties does not weigh in favor of Defendants. The evidence shows that Defendants received over $800,000 from Plaintiff while Plaintiff received nothing in return. In addition, there is a genuine issue of material fact exists as to whether Plaintiff was a vulnerable adult during the relevant time period.

Second, Defendants have shown no prejudicial change of position in reliance on Plaintiff's conduct. Absent from the record or Defendants' filings with the Court is evidence or argument suggesting that Plaintiff suffered any detriment as a result of Plaintiff's conduct before the filing of this suit.

Defendants' arguments for the application of waiver are also unpersuasive. Defendants make a cursory argument that Plaintiff characterizing his relationship with Sonia as romantic, continuing voluntary contact for months after transfers, and approving fund usage, constituted a waiver. However, as discussed above, Plaintiff testified that he did not realize that he was being

exploited at the relevant times.  ECF No. 80-6, Exh. 5, Lou Dorff Dep. at 83:16-84:22, 47:19-48:3.

This is not a case where Plaintiff sat on his rights or leveraged his claims to the detriment of

Defendants.

Based on the foregoing, the sixth affirmative defense does not support granting Defendants'

Motion for Summary Judgment.

## <u>CONCLUSION AND RECOMMENDATION</u>

Based on the foregoing, the undersigned **RECOMMENDS** that the district court **DENY**

**in part and GRANT in part** the Motion for Summary Judgment (ECF No. 68) to **GRANT**

summary judgment as to the Fourth Cause of action, Aiding and Abetting Breach of Fiduciary

Duty, against Taylor-Marie and **DENY** summary judgment as to all other claims.

**IT IS SO RECOMMENDED.**

s/William S. Brown<br>
United States Magistrate Judge

April 8, 2026
Greenville, South Carolina

*The attention of the parties is directed to the important notice on the following page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
250 East North Street, Suite 2300
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).